UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.

SUDIPTA MOHANTY

Defendant

Case No. 23-cr-10246-DLC

**GOVERNMENT'S MOTION IN LIMINE TO ADMIT CHILD WITNESS'S STATEMENTS UNDER FED. R. EVID. RULES 803(2) AND 807**

The United States of America hereby moves to admit statements of the child witness in this case, Minor A,[1] made (1) to her grandmother (LD) during the May 27, 2022 flight from Hawaii to Massachusetts and upon the flight's arrival to the airport; (2) to her mother (DB) within hours after the flight; (3) to her brother (RB) within hours after the flight; and (4) to her cousin (MC) and to LD on July 10, 2022, the day before Minor A's return flight from Massachusetts to Hawaii.

**BACKGROUND**

On August 9, 2023, Sudipta Mohanty was indicted by a grand jury of one count of violating Title 49, United States Code, Section 45606(2) (application of certain criminal laws to acts on aircraft) and District of Columbia Code Section 22-1312 (lewd, indecent, or obscene acts). The evidence at trial will show that on or about May 27, 2022, Mohanty knowingly

[1] The true name and identity of Minor A and her family members is known to the government and to defense counsel. The government is using a pseudonym and initials in this filing to protect Minor A's privacy because she is a minor and a witness in a case involving sexual conduct.

engaged in lewd, indecent, or obscene acts on an airplane in flight while seated next to Minor A, who was fourteen at the time.

Specifically, the evidence at trial will show that on May 27, 2022, Minor A was on Hawaiian Airlines Flight 90 travelling from Honolulu, Hawaii to Boston, MA with her grandparents to stay with them for the summer. The flight was an approximately 9.5-hour long red-eye flight, leaving Hawaii in the late afternoon/evening local time and arriving in Boston in the early morning local time. Minor A's seat was on the aisle in the center row of seats, to the right of Mohanty, while her elderly grandparents (LD and DD) were seated together one row ahead on the plane. While on the flight, and within view of Minor A, Mohanty exposed his penis, masturbated, and ejaculated.

At trial, the government expects that Minor A will testify about Mohanty's lewd behavior during the flight. Minor A is expected to testify that this was the first time that Minor A had seen an adult male penis or male masturbation and that she was very disturbed and upset by what she saw.

The government also seeks to admit evidence of Minor A's statements to family members regarding Mohanty's in-flight lewd conduct. Specifically, after witnessing Mohanty expose his penis, masturbate, and ejaculate, Minor A moved to a row behind her assigned seat, in which there were two empty seats. When Minor A saw LD looking for her, she approached LD and indicated that there was a situation, that she had moved seats, and that she would tell LD more when they landed. Once off the plane and at Logan Airport in Boston, MA, Minor A told LD that the man seated next to her (later identified as Mohanty) had done something inappropriate. LD recalled that Minor A also told her that the man had been touching himself under a blanket, so she had gotten up and left; LD asked whether the man had been touching his

"private parts" and Minor A confirmed that he had. Minor A appeared very uncomfortable talking about it.

After landing in Boston, Minor A and her grandparents traveled to Minor A's uncle's house in New Hampshire. From there, within hours after landing, when speaking to her mother DB (by phone) for the first time since witnessing Mohanty's lewd conduct, Minor A told DB that something inappropriate had happened during the flight but that she had removed herself from the situation and was ok.[2]

Directly after the conversation with her mother on May 28, Minor A called her then-17-year-old brother RB because she felt she had to tell someone fully what had happened on the flight.[3] Minor A told RB that the man sitting next to her on the plane from Honolulu to Boston was masturbating or "jacking off" on the plane. When RB inquired if Minor A had seen the man's penis, Minor A confirmed that she had. Although Minor A believes that they laughed about the incident, she is expected to testify that she was very disturbed by it, and RB is expected to testify that she sounded disturbed, uncomfortable, and hesitant in this conversation.

After this incident, over the course of the summer, Minor A displayed signs of anxiety and exhaustion and she experienced drops in her blood sugar, which was normally well

---

[2] The next day, on May 29, Minor A spoke with DB again and told her more detail, including that Mohanty had been "rubbing himself." The government is not seeking to introduce this statement at this point in time, although it reserves the right to seek to do so.

[3] The government expects that Minor A will testify that this occurred on May 28, 2022, the day she landed in Boston, MA, directly after the conversation with her mother. The government expects that RB will testify that he is uncertain about the timing of this conversation, but believes it was 3 to 5 days after Minor A had arrived in Massachusetts. The government submits that Minor A's memory as to the timing of this conversation is more reliable because the incident had a greater effect on her.

controlled.[4] For example, about a week after Flight 90, Minor A's blood sugar was the lowest it had been since she began testing.[5] Over the course of the summer, Minor A mentioned the airplane incident to a friend back home, brought it up again to her mother, and brought it up to another family friend.[6]

As the date of Minor A's return flight to Hawaii (which she would be making alone, as an unaccompanied minor) approached, LD noticed her growing more and more anxious. On July 10, 2022, the day before Minor A's flight, LD and her husband had a cookout at their home in Connecticut that was attended by Minor A and other family. During the cookout, LD overheard Minor A discussing Mohanty's lewd conduct with Minor A's cousin, MC. Specifically, Minor A told MC that she was nervous about flying home because on the flight to Boston the man seated next to her had been touching himself under a blanket, and then the blanket had moved and "it was there" (referring to the man's exposed penis). Minor A told MC that she could not get the vision out of her head. When LD, who had overheard this conversation, asked Minor A why she had not told LD previously that the man on the plane had been exposed, Minor A indicated that she had been embarrassed. The next day, when Minor A and her grandparents arrived at Logan Airport, LD and her husband told Hawaiian Airlines management about what happened in an effort to avoid Minor A's experiencing any issue in the return flight home.

---

[4] Minor A had been diagnosed with diabetes years before.

[5] DB recalls this drop in blood sugar occurring in close proximity to the flight. Minor A recalls it occurring later that week.

[6] The government is not seeking to introduce these statements at this time, although it reserves the right to seek to do so.

## DISCUSSION

The government moves to admit the statements of Minor A to her grandmother, her mother, and her brother on or about May 27 and 28, 2022 about Mohanty's lewd conduct on Flight 90. The government also moves to admit the statements of Minor A to her cousin and grandmother on or about July 10, 2022 about Mohanty's lewd conduct on Flight 90. These statements are admissible under the Excited Utterance Exception to the Hearsay Rule, FED. R. EVID. 803(2), or, alternatively, as reliable hearsay admissible under the Residual Exception, FED. R. EVID. 807.

Importantly, the admission of these statements will not pose Confrontation Clause problems because the declarant (*i.e.,* Minor A) will testify and be subject to cross-examination. *See Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004) (stating that "when the declarant appears for cross examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements" (citing and quoting *California v. Green*, 399 U.S. 149, 162 (1970)), "[t]he Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it")). Because the statements do not pose Confrontation Clause issues, and because they fall within exceptions to the rule against hearsay and are reliable, they should be admitted.

### A. Minor A's Statements are Admissible as Excited Utterances

Each of the statements that the government seeks to admit are admissible as an excited utterance under FED. R. EVID. 803(2). A statement is admissible as an excited utterance when (i) the declarant experienced a "startling event or condition"; (ii) the statement was "made while the declarant was under the stress of excitement" caused by the event or condition; and (iii) the statement "relat[ed] to [the] startling event or condition." FED. R. EVID. 803(2); *see also United*

*States v. Irizarry-Sisco*, 87 F.4th 38, 45 (1st Cir. 2023) *(citing United States v. Collins*, 60 F.3d 4, 8 (1st Cir. 1995)). The rationale for the exception is that "excitement suspends the declarant's powers of reflection and fabrication, consequently minimizing the possibility that the utterance will be influenced by self interest and therefore rendered unreliable." *Irizarry-Sisco,* 87 F.4th at 45 (citing *United States v. Taveras*, 380 F.3d 532, 537 (1st Cir. 2004)). Importantly, with respect to the statements made later in the summer, in *Irizarry-Sisco,* the Court held that the district court did not err in admitting statements of a minor victim (11 years old at the time) to a neighbor under FED. R. EVID. 803(2) that were made a week after she was sexually assaulted by a family friend at a hotel, where she made the statements in an anxious state when her anxiety had been triggered by a sound that she thought was the perpetrator's car pulling up to the house.

When considering the first prong of the excited utterance test – whether the declarant experienced a "startling event or condition" – courts "look primarily to the effect upon the declarant and, if satisfied that the event was such as to cause adequate excitement, the inquiry is ended." *Id.* at 45 ((internal quotations omitted) (citing *United States v. Napier*, 518 F.2d 316, 318 (9th Cir. 1975)). Notably, as recognized in both *Irizarry-Sisco* and *Napier,* an individual can be "re-excited" by an event that reminds them of a previous startling event; in such instances, the event that re-excites them is considered the starling event for purposes of the analysis. *Irizarry-Sisco*, 87 F.4th at 46; *see also Napier,* 518 F. 2d at 317.

In considering the second prong (*i.e.,* whether the statement was made while under the stress of the event or condition) the ultimate question is "whether the statement was the product of reflective thought or the stress of excitement caused by the startling event." *Irizarry-Sisco*, 87 F.4th at 46-47 (internal quotations omitted) (citing *United States v. Magnan*, 863 F. 3d 1284, 1293 (10th Cir. 2017)). Relevant factors include "(a) the amount of time between the event and

the statement, (b) the nature of the event, (c) the subject matter of the statement, (d) the age and condition of the declarant, (e) the presence or absence of self-interest, and (f) whether the statement was volunteered or in response to questioning." *Id.* at 47 (internal citations and quotations omitted); *see also United States v. Pursley*, 577 F.3d 1204, 1220 (10th Cir. 2009) (collecting cases).

As to the third prong, whether the statement is relating to a startling event or condition, the First Circuit stated that a statement relating to a startling event includes statements "markedly broader" than just those "describing" or "explaining" an event. *Irizarry-Sisco,* 87 F.4th at 48. It "encompasses those situations in which the subject matter of the statement is such as would likely be evoked by the event." *Id.* (internal quotations and citations omitted).

Applying this standard here, the statements from May 27/28 and July 10 are admissible as excited utterances.

*a. Minor's Statements on or around May 27/28, 2022*

Here, as to the first prong of the test, Minor A experienced a startling event on or about May 27, 2022. While on a 9.5-hour redeye flight from Hawaii to Boston, traveling without her parents or siblings and seated away from her grandparents, Minor A witnessed Mohanty expose his penis and masturbate and ejaculate in an airplane seat directly next to her. Up to that point, Minor A had not been exposed to an adult male penis or male masturbation, so the event was especially shocking and disturbing to her.

As to the second prong of the test, Minor A was under the influence of the stress of observing Mohanty's lewd conduct when she made the relevant statements to her grandmother, mother, and brother, all within hours of the flight. Although excited utterances are often thought of as occurring within moments of the exciting event, "[a]s to timing, this Circuit has stated that

there is by no means a bright-line test." *United States v. Shoup*, 476 F.3d 38, 43 (1st Cir. 2007) (citation omitted); *see also Gross v. Greer*, 773 F.2d 116, 119 (7th Cir. 1985) (finding it is "well-established that the lapse of time between the startling event and the out-of-court statement, although relevant, is not dispositive"); *but see United States v. Taveras*, 380 F.3d 532, 537 (1st Cir. 2004) ("The time lapse in most excited utterance cases is usually a few seconds or a few minutes. In extreme circumstances, we have even accepted a delay of a few hours." (citations omitted)).

Courts have recognized that cases involving child witnesses to sexual misconduct are different and have set aside typical expectations about the timing of excited utterances in those cases. For example, in *Morgan v. Foretich*, 846 F.2d 941 (4th Cir. 1988), the court affirmed admission of the statements of a minor victim to her mother up to 3 hours after returning home from visitation periods with her father and grandparents and noted that courts must "be cognizant of the child's first real opportunity to report the incident." *Id.* at *947; see also United States v. Rivera*, 43 F.3d 1291, 1296 (9th Cir. 1995) (holding that the district court properly permitted victim's mother to testify about 15-year-old daughter's statements regarding defendant raping and threatening minor, made to her mother at least one and a half hours after intercourse, according to the defendant). In *United States v. Jennings*, 496 F.3d 344 (4th Cir. 2007), the defendant subjected the 13-year-old victim to sexual contact while they were on a flight. Five minutes after flight attendants moved the defendant away from the victim, she told another passenger about his touching. After the plane landed, the defendant approached the victim and apologized for the flight attendants moving him, after which the victim told another passenger about defendant's sexual contact on the plane. The Circuit court held that the statements that victim made to the two passengers (one during the flight and the other right after the flight) fell

within the excited utterance exception to the hearsay rule because the victim had related a startling event while still under the stress of the event. In fact, in that case, the court wrote that there was no "rule that requires children to report sexual abuse at the earliest opportunity in order for their statements to be considered excited utterances." *Id.* at 350. Considering the fact that Minor A's statements to her grandmother, mother, and brother were all made within hours of the flight on which she observed the disturbing lewd conduct, and how courts give an expanded view of what constitutes an "excited utterance" in cases involving minors' reports regarding sexual misconduct they have observed or experienced, these statements were sufficiently close in time to the startling event for the court to conclude that Minor A was under the influence of the startling event when she made the statements.

The other factors that the court considers relating to the second prong likewise demonstrate that Minor A was under the influence of the startling event at the time she made her statements to her mother, brother, and grandmother. Minor A was then a 14-year-old girl who suffered from diabetes and was traveling without her immediate family and in a row away from her grandparents. She had not seen a man's penis or male masturbation before and was subjected to the sight of Mohanty's exposed penis, masturbation, and ejaculation in the seat directly next to her. Minor A was, understandably, deeply uncomfortable with Mohanty's lewd conduct and immediately moved seats to get away from him. She provided high-level information to her grandmother during the flight to explain why she had moved, and more upon their arrival at the airport. At her first opportunity to share with her mother and brother (who were in other states at that time), when they arrived at her uncle's house in New Hampshire, Minor A did so during their phone calls. Further, this is not a case where the witness had any motive to lie. The second prong is satisfied.

As to the third prong of the test, the statements directly related to the event because Minor A was actually describing Mohanty's lewd conduct during the flight to her grandmother, mother, and brother.

*b. Minor Statements on or about July 10, 2022*

With respect to statements that Minor A made to MC and LD on or about July 10, 2022, the relevant startling event was the realization that her return flight was imminent, which re-excited Minor A and evoked intense anxiety based on Minor A's previous flight experience.

In *United States v. Napier*, 518 F.2d 316, 317-318 (9th Cir. 1975), a victim of a violent assault was "re-excited" eight weeks after the attack after being shown a newspaper photograph of her alleged attacker by her sister at home. The *Irizarry-Sisco* court discussed how, in *Napier,* the event's "connection with a previous startling event -- even one remote in time -- imbued it with that quality in light of the effect that it had on the victim." *Irizarry-Sisco,* 87 F.4th at 46. The *Irizarry-Sisco* court, applying that reasoning to the facts in the case before it, found that "while hearing a truck is not in and of itself startling," when that "truck is associated with the two recent sexual assaults that [the minor victim] had allegedly experienced, hearing that sound could have had the potential to 're-excite' [the minor victim] (and clearly seemed to do so)." *Id.* Similarly here, in July 2022, Minor A experienced the looming of her upcoming flight as a startling event because she associated air travel with the upsetting lewd conduct that she had been traumatized by witnessing on her last long-haul flight. The prospect of flying an 11-hour flight back to Hawaii as an unaccompanied minor, with no control over or knowledge about who would be sitting next to her on the flight, had the potential to, and did in fact, re-excite her that day.

Minor A was subject to the influence of that startling event –her impending flight – when she made the relevant statements to her cousin and grandmother. Her statements were made in close proximity to that startling event and were the product of her stress caused by the event.

Finally, with respect to the third prong, Minor A's statements to MC and LD on or about July 10, 2022 are related to the startling event. Minor A brought up what had happened on her prior flight in the context of sharing why she was nervous for the return flight. For Minor A, like the sounds of the truck for the minor in *Irizarry-Sisco,* the stress of the looming return flight "conveyed her" back to witnessing Mohanty's lewd conduct on the redeye flight from Hawaii, and she was on the cusp of making her 11-hour return flight the following day.

Accordingly, both Minor A's statements on May 27/28 and on July 10 are admissible as excited utterances.

**B. The Statements Are Admissible Under the Residual Hearsay Exception**

Even if this Court finds that the statements are not admissible under the excited utterance exception, the statements of the Minor A should be admitted under a residual hearsay exception under F.R.E. 807(a). The residual exception allows the admission of a statement not specifically covered by FED. R. EVID. 803 or 804 if "(1) the statement has equivalent circumstantial guarantees of trustworthiness; (2) it is offered as evidence of a material fact; (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and (4) admitting it will best serve the purposes of these rules and the interests of justice." FED. R. EVID. 807(a). *See also United States v. Donlon*, 909 F.2d 650, 654 (1st Cir. 1990) (holding that not qualifying for another hearsay exception does not preclude the application of the residual hearsay exception: "We do not believe that the 'potential' availability of one kind of hearsay exception automatically rules out the use of another.").

**1. Minor A's Statements Have Equivalent Guarantees of Trustworthiness to Other Hearsay Exceptions**

With respect to the first prong of the residual hearsay exception test, the Supreme Court has noted that "particularized guarantees of trustworthiness" must be "drawn from the totality of circumstances that surround the making of the statement and that render the declarant particularly worthy of belief." *Idaho v. Wright*, 497 U.S. 805 (1990) (finding that State Supreme Court erred in standard applied when determining trustworthiness, though the Supreme Court affirmed reversal of the mother's conviction based on Confrontation Clause issues). In the context of child sexual abuse, the court identified the following factors to consider when determining whether an out-of-court statement made by a child witness is sufficiently reliable to be admitted under the residual clause: "(1) spontaneity and consistent repetition, (2) the mental state of the declarant, (3) the use of terminology unexpected of a child of similar age, and (4) the lack of a motive to fabricate." *Id.* at 821-22. Here, those factors weigh in favor of admitting Minor A's statements to her family members under the residual clause.

This circuit has stated that "Congress intended the residual hearsay exception to be used very rarely, and only in exceptional circumstances." *United States v. Ellis*, 935 F.2d 385, 394 (1st Cir. 1991) *cert. denied*, 116 L. Ed. 2d 160, 112 S. Ct. 201 (1991) (internal citations and quotations omitted));[7] *see also United States v. Peneaux,* 432 F.3d 882, 892 (8th Cir. 2005) (affirming admission of hearsay statements made by minor victim pursuant to FED. R. EVID. 807, finding that statements "possessed equivalent circumstantial guarantees of trustworthiness to the other hearsay exceptions" in part because the victim "testified at trial and was subject to cross-examination," which "vitiates the main concern of the hearsay rule," and "[t]he jury was able to

[7] The hearsay exception was at the time covered by former FED. R. EVID. 803(24).

weigh her statements and accord them whatever weight they deemed appropriate" (internal citations omitted)); *United States v. Renville*, 779 F.2d 430, 440 (8th Cir. 1985) (affirming admission of child victim's statement to deputy sheriff under former FED. R. EVID. 803(24), finding "significant indicia of reliability" in the statement because "[m]ost important[ly], the declarant testified at trial and was subject to cross-examination"). This is such a case. Minor A will testify and be subject to cross-examination at trial, vitiating the main concern of the hearsay rule; and her prior statements are probative and important evidence that she did not fabricate, change, or exaggerate her allegations.

Many state courts allow a witness to testify that the victim of a sexual assault reported the assault to that witness.[8] In Massachusetts, this doctrine is referred to as the First Complaint doctrine.[9] The doctrine has been noted as potentially implicating the residual hearsay exception in federal court. *See United States v. Cherry*, 938 F.2d 748 (7th Cir. 1991).[10] Some states limit

[8] The doctrine is recognized in Massachusetts, Maine, New Hampshire, Connecticut, New York, Vermont (if the victim is under 12), New Jersey, Maryland, North Carolina, Virginia, West Virginia, Louisiana, Texas, Michigan, Ohio (if the victim is under 12 at time of trial), Tennessee, Illinois (if the victim was under 13), Arkansas (if the victim is under 10), Iowa, Missouri, Nebraska, Alaska, California, Idaho (if the victim was under 10), Washington (if the victim is under 10), Colorado (if victim was under 16), Wyoming, Alabama (if the victim is under 12), Florida (if the victim is under 12), Georgia (if the victim is under 16), and in certain circumstances in the District of Columbia.

[9] The doctrine's name differs throughout the states. Other names of this doctrine include fresh complaint, prompt complaint, early complaint, corroborative complaint, bare fact of complaint, outcry, prompt outcry, and constancy of accusation. Typically, courts applying these doctrines will admit evidence of the victim's first statement, or first complete statement, about the offense.

[10] In *Cherry*, the government filed a motion to introduce statements of the thirteen-year-old rape victim to her friend the day after the rape under the residual hearsay exception, former Federal Rule of Evidence 803(24). *Id.* at 751. The government argued that this disclosure was a "'fresh complaint' of forcible sexual assault and therefore had sufficient indicia of reliability to qualify for admission under this rule." *Id.* The district court agreed to hear the testimony, but reserved ruling on admissibility until the evidence came in at trial. In the end, the defense counsel cross-

the First Complaint testimony to only the fact that the victim told the witness about the assault; Massachusetts allows the witness to testify as to details that the victim relayed to the witness. *See Commonwealth v. King*, 445 Mass. 217, 244, 834 N.E.2d 1175 (Mass. 2005) (holding that the first complaint witness may testify as to these details because this gives the fact finder "the maximum amount of information with which to assess the credibility of the . . . complaint evidence as well as the overall credibility of the victim" by allowing the jury to compare the victim's testimony to their statement shortly after the assault) (quoting *Commonwealth v. Licata*, 412 Mass. 654, 659, N.E.2d 672 (Mass. 1992)).

Based on the totality of the circumstances, here, Minor A's out-of-court statements have the equivalent circumstantial guarantees of trustworthiness as statements that fall within enumerated hearsay exceptions. The initial statements that Minor A made to her grandmother, mother, and brother on or about May 27, 2022, were all made spontaneously, and she was the one who initiated them when she could. The statements she made to MC on or about July 10, 2022 were also spontaneous, and were what prompted follow-up questioning by LD. While the conversations included follow-up questions posed by her family members in each instance, those questions served to clarify and make sure the family members understood what Minor A was telling them.

The statements also remained consistent in that they indicated that Mohanty had engaged in lewd conduct on the airplane that made Minor A uncomfortable. As discussed infra, on or about May 27, 2022, Minor A was in distress caused by having seen Mohanty expose his penis,

examined the witness and the court ruled that the evidence was at least admissible under Rule 801(d)(1) as a prior consistent statement. *Id.* The Seventh Circuit affirmed the admission of the disclosure under this rule. *Id.* at 756.

masturbate, and ejaculate right next to her. As a fourteen-year-old, she knew what she had seen was sexual in nature and made her uncomfortable, but she was too embarrassed to discuss in detail with her much older grandmother and thus described it in general terms as inappropriate. Minor A went into more details as she spoke to closer (and younger) family members. On or about July 10, 2022, she was anxious about the prospect of having to fly again and confided in family members about the reason for her anxiety. And, notably, there was no motive at any point for Minor A to fabricate what she had seen to any of those with whom she shared.

**2. Minor A's Statements Are Offered as Evidence of a Material Fact**

Minor A's statements to her family members about what happened on the flight would be offered as evidence of a material fact – specifically, as evidence that Mohanty in fact exposed his penis and masturbated in public, a critical element of the crime of which he stands charged. As discussed below, the fact that she immediately – within hours – told family what had occurred in May 2022, and continued to be affected by it six weeks later as she prepared for her return flight in July 2022, makes it more likely that what she will testify in January 2024 occurred on the flight in fact occurred.

**3. Minor A's Statements Are More Probative Than Any Other Evidence That Can Be Reasonably Obtained; and Admitting Minor A's Statements Will Best Serve the Purposes of the Rules and the Interests of Justice**

Finally, Minor A's contemporaneous statements to family are the most probative evidence that can reasonably be obtained corroborating Minor A's in-court testimony, and thus their admission serves the purposes of the rules and the interests of justice. *See United States v. Iaconetti*, 406 F. Supp. 554, 559 (E.D.N.Y. 1976) (Weinstein, J.), *affirmed*, 540 F.2d 574 (2d Cir. 1976), *cert. denied*, 429 U.S. 1041 (1977) (admitting a statement under former FED. R. EVID. 803(24) and holding that the purposes of the federal rules and the interests of justice will best be served by admission because "[t]here is a clear conflict of credibility.") Here, when law

enforcement confronted Mohanty with Minor A's allegations by law enforcement, Mohanty alternately stated that he denied or "did not recall" engaging in such conduct. Because Mohanty engaged in the lewd conduct on an airplane during a red-eye flight, when the nearby passengers except Minor A were sleeping, no other witnesses can confirm or deny Minor A's allegations or Mohanty's refutations regarding what happened in row 23, and the Court's ability to assess Minor A's credibility will be key. Evidence of Minor A's contemporaneous statements powerfully corroborates her testimony.

Put differently, excluding such statements would leave the factfinder with only Minor A's testimony about what occurred on the plane in May 2022, and would deprive the factfinder of evidence needed to assess the credibility of that testimony – namely, what she said directly after the incident.[11]

**CONCLUSION**

Minor A's statements to family on May 27/28, 2022 and July 10, 2022 regarding what happened on Flight 90 qualify as excited utterances and also bear indicia of trustworthiness such that alternately they should be admitted under the residual exception. The government thereby

[11] The government will note that per FED. R. EVID. 801(d)(1)(B), if, during cross-examination of Minor A, there is an express or implied charge against her of recent fabrication or improper influence or motive, or her credibility is attacked on another ground, the government may offer Minor A's prior consistent statements for both rehabilitative and substantive purposes. FED. R. EVID. 801(d)(1)(B). *See also United States v. Chiu*, 36 F.4th 294, 300 (1st Cir. 2022); *United States v. Jahagirdar*, 466 F.3d 149, 155 (1st Cir. 2006). Further, a witness's prior consistent statement may be introduced as nonhearsay by any witness, so long as the witness who made the statement is available for cross-examination during trial. *See United States v. Piva*, 870 F.2d 753, 758 (1st Cir. 1989); *United States v. Green*, 258 F.3d 683, 691 (7th Cir. 2001) (collecting cases).

asks that the Court allow the witnesses to testify about Minor A's statements to LD, DB, RB, and MC on May 27/28, 2022 and July 10, 2022.

Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

By: *<u>/s/ Jessica L. Soto</u>*
ELIANNA J. NUZUM
JESSICA L. SOTO
Assistant United States Attorneys

**<u>CERTIFICATE OF SERVICE</u>**

This is to certify that I have this day served a copy of the foregoing upon all counsel of record by electronic filing notice.

*<u>/s/ Jessica L. Soto</u>*
Assistant U.S. Attorney

Dated: January 12, 2024