UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SUDIPTA MOHANTY<br><br>Defendant | Case No. 23-cr-10246-DLC |

## GOVERNMENT'S TRIAL BRIEF

The United States respectfully submits this trial brief for the bench trial scheduled to begin on January 29, 2024. The indictment charges the Defendant, Sudipta Mohanty, with one count of violating Title 49, United States Code, Section 45606(2) (application of certain criminal laws to acts on aircraft) and District of Columbia Code Section 22-1312 (lewd, indecent, or obscene acts), specifically alleging that he "did, in public, make an obscene or indecent exposure of his genitalia and engage in masturbation." Dkt. No. 17. This brief provides an overview of anticipated trial evidence as well as a discussion of certain anticipated evidentiary and legal issues that may arise at trial. The government expects the trial to last one to two days.

### I. OVERVIEW OF ANTICIPATED EVIDENCE

On May 27, 2022, Mohanty was on Hawaiian Airlines Flight 90 traveling from Honolulu, Hawaii to Boston, MA with a female companion. On the same flight was Minor A, a then 14-year-old girl, who was a resident of Hawaii but traveling with her grandparents who reside in Connecticut to stay with them for the summer. The flight was an approximately 10-hour long red-eye flight, leaving Hawaii in the late afternoon local time and arriving in Boston in the early morning local time. Minor A's seat was the right aisle seat in the center row of seats, to the right of Mohanty, while her elderly grandparents (LD and DD) were seated together one row ahead

1

and on the right side of the plane.  With respect to the details of the flight, including date, time, place of departure, and seating arrangement, the government intends to introduce a subset of the Hawaiian Airlines business records that were produced in discovery as self-authenticating Certified Domestic Records of a Regularly Conducted Activity, which are also admissible as hearsay exceptions under Rule 803(6).  Defense has assented to admission of these records in this manner.  The government may also introduce the testimony of a Hawaiian Airlines witness to establish that Hawaiian Airlines Flight 90 on May 27-28, 2022 falls within the special aircraft jurisdiction of the United States,[1] although the parties expect to reach a stipulation to this fact.

      Minor A is expected to testify that midway through Flight 90, within her view, a man (which other evidence will demonstrate is Mohanty[2]) exposed his penis, masturbated, and ejaculated.  Although he had been covered by a blanket for a period of time, at some point the blanket came off him, and she saw his exposed penis, his hand moving up and down it, and him ejaculating.  Minor A is also expected to testify that this was the first time that Minor A had seen an adult male penis or male masturbation and that she was very disturbed and upset by what she saw.  After witnessing Mohanty expose his penis, masturbate, and ejaculate, Minor A moved to a row behind her assigned seat, in which there were two empty seats.  The government expects the passenger who was sitting in the seat to the right of Minor A's new seat to testify about Minor A's mid-flight seat change.  The government also has filed motions *in limine* to admit as

---

[1] "Special aircraft jurisdiction" for purposes of 49 U.S.C. § 46506(2) applies to any civil aircraft "in flight,"  49 U.S.C. § 46501(2), which means "from the moment all external doors are closed following boarding . . . through the moment when one external door is opened to allow passengers to leave the aircraft . . . ." 49 U.S.C. § 46501(1).

[2] Minor A will not be asked to identify the defendant.  Rather, his identity will be established by virtue of Minor A's description of the perpetrator and his traveling companion, which matches exactly the appearance of Mohanty and his girlfriend; Mohanty's seating assignment, which is the seat directly to the left of Minor A's assigned seat; and witness testimony that both Minor A and Mohanty were in their assigned seats.

evidence statements that Minor A made to family members regarding Mohanty's in-flight lewd conduct (Dkt. No. 34) and Mohanty's statements when questioned about his conduct by agents on May 6, 2023 (Dkt. No. 35).

## II. LEGAL STANDARD[3]

### A. *Statutes and Elements*

Section 46506(2) of Title 49 of the United States Code provides, in relevant part: "An individual on an aircraft in the special aircraft jurisdiction of the United States who commits an act that . . . if committed in the District of Columbia would violate section 9 of the Act of July 29, 1892 (D.C. Code § 22-1112), shall be fined under title 18, imprisoned under section 9 of the Act, or both." "Special aircraft jurisdiction" for purposes of 49 U.S.C. § 46506(2) applies to any civil aircraft "in flight," 49 U.S.C. § 46501(2), which means "from the moment all external doors are closed following boarding . . . through the moment when one external door is opened to allow passengers to leave the aircraft . . . ." 49 U.S.C. § 46501(1). Accordingly, to prove a violation of 42 U.S.C. § 46506(2), the government must prove (1) that the defendant committed a violation of the relevant D.C. Code (2) while in the special aircraft jurisdiction of the United States. That any conduct on board Hawaiian Airlines Flight 90 on May 27-28, 2022 falls within the special aircraft jurisdiction of the United States is expected to be stipulated. Accordingly, the focus of trial is expected to be on whether the D.C. Code section was violated.

Section 22–1312 of the District Columbia Code (previously codified as D.C. Code § 22-1112) provides, in relevant part: "It is unlawful for a person, in public, to make an obscene or indecent exposure of his or her genitalia or anus, to engage in masturbation, or to engage in a sexual act as defined in § 22-3001(8)." A violation of this statute is established if a defendant (1)

---

[3] Because this is a bench trial, the government submits this overview of the legal standard in lieu of the jury instructions it would ordinarily submit.

3

intentionally exposed their genitalia *or* masturbated and such action was (2) at such a time and place, where as a reasonable person they know or should know their act will be open to the observation of others.  *Rolen-Love v. District of Columbia*, 980 A.2d 1063, 1065 (D.C. Cir. 2009); *Parnigoni v. District of Columbia*, 933 A.2d 823 (D.C. Cir. 2007).  Whether Mohanty violated this statute will be contested.

With respect to the first element, by the plain language of the text, it may be met ***either*** by intentional exposure of genitalia *or* intentional masturbation; that is to say, a defendant who intentionally masturbates in public has violated the statute, regardless of whether his genitalia are exposed during the masturbation and regardless of whether he intended any exposure.  Although the government has not located a case involving the D.C. code in which that distinction was at issue, courts interpreting other statutes involving lewdness have also come to the common-sense conclusion that public masturbation, even where there is no exposure, qualifies as lewd conduct.  For example, N.Y. Penal Law § 245.00) provides, in relevant part: "A person is guilty of public lewdness when he or she intentionally exposes the private or intimate parts of his or her body in a lewd manner *or commits any other lewd act*... in a public place." (Emphasis added.)  In *Liverpool v. Cleveland,* 2019 U.S. Dist. LEXIS 168994 (E.D.N.Y. Sep. 30, 2019), interpreting that statute, the court found that exposure of the penis "is not a necessary pre-condition for concluding that the plaintiff was committing an act of public lewdness. The officer saw the plaintiff near a school, moving his hand up and down in his pants. That established probable cause to arrest the plaintiff for public lewdness…"[4]  The D.C. statute at issue here is even more

---

[4] Likewise, Va. Code Ann. § 18.2-387 provides, in relevant part: "Every person who intentionally makes an *obscene display* or exposure *of his person*, or the private parts thereof, in any public place, or in any place where others are present, or procures another to so expose himself, shall be guilty of a Class 1 misdemeanor." (Emphasis added.)  Interpreting that statute, the case notes provide: "Because a man masturbating in public could still display his "person" or "private parts" while not exposing his penis to sight, defendant's public masturbation in front of

4

clear, as it explicitly lists "to engage in masturbation" as one of the acts prohibited in public; exposure is a separate act, an alternate way in which the statute can be violated. Here, the government expects Minor A to testify that she was the man seated next to commit both acts: exposure *and* masturbation. But either one is enough.

The second element is met when the exposure or masturbation is conducted in public, that is, at such a time and place as a reasonable man knows or should know his act will be open to the observation of others. *See Peyton v. District of Columbia*, 100 A.2d 36, 37 (D.C. Cir. 1953). Here, the government expects Minor A to testify that the man masturbated and exposed himself in a full row, on a full flight, mere inches from her body while she was awake and watching a show and playing a game on her phone; under such circumstances, a reasonable man would know that his act would be open to the observation of others.

B. Intent

1. *Intent under "exposure" theory*

Where the government proceeds on a theory of intentional exposure, the government must prove that the defendant had the general intent to expose himself, *i.e.,* for his genitalia to be

---

children was an obscene "display" of his person or private parts even though he was fully clothed"). Va. Code Ann. § 18.2-387 (Lexis Advance through 2023 Special Session I) *citing Moses v. Commonwealth*, 45 Va. App. 357 (2005).

Similarly, the "lewd, wanton, and lascivious behavior" statute, M.G.L. c. 272, § 53, criminalizes "lewd, wanton and lascivious persons in speech or behavior . . . and persons guilty of indecent exposure" and provides for a sentence of up to 6 months in prison. That statute has been construed by the SJC as prohibiting "the commission of conduct in a public place . . . when the conduct committed . . . involves the touching of the genitals, buttocks, or female breasts, for purposes of sexual arousal, gratification, or offense, by a person who knows or should know of the presence of a person or persons who may be offended by the conduct." *Commonwealth v. Sefranka*, 382 Mass. 108, 116 (1980). Massachusetts courts have held that "exposure of the relevant anatomy is not required under § 53." *Commonwealth v. Blackmer*, 77 Mass. App. Ct. 474, 480 (2010) (finding that public, unexposed masturbation "clearly supports" a conviction under the lewd & lascivious conduct statute, M.G.L. c. 272, § 53).

seen.  The intent required is general and need not be directed toward any specific person.  *Peyton*, 100 A.2d at 37. The required criminal intent can be established by some action by which the defendant draws attention to his exposed condition *or* by his display in a place so public that it must be presumed that it was intended to be seen by others, *or* the intent can be also inferred from the recklessness of defendant's conduct in making his display.  *Id.*; *see also Davenport v. United States,* 56 A.2d 851, 852 (D.C. App. Ct. 1948) (discussing the general criminal intent required by a similar national parks regulation; "If . . . it is defendant's contention that in order to constitute the crime of indecent exposure it is necessary that the exposure be made with the purpose and intent that some specific person or persons shall observe it, such contention is incorrect. An indecent exposure in a public place likely to be observed by others is a criminal offense regardless of the purpose with which it is made. . . . One may not knowingly expose his person in a public place under circumstances which make it probable that he will be observed and then assert that if he was observed the exposure was unintentional and accidental.").  Here, the government will argue that the defendant's taking his penis out of his pants on an airplane within inches of a child who was awake was an act so public that it must be presumed it was intended to be seen by others, and/or involved recklessness sufficient to meet the requirement. This is regardless of whether he was covered by a blanket for some portion of his activities, and regardless of whether he intended the blanket to fall.

In *United States v. Froula*, the defendant was convicted of violating 49 U.S.C. § 46506(2), incorporating D.C. Code § 22-1112 (*i.e.,* the statute at issue here), after the defendant had his genitals exposed and was seen touching his penis, while seated on board a flight from Louisville to Denver.  No. 07-mj-01179-MJW, 2007 U.S. Dist. LEXIS 87497 (D. Colo. Nov. 28, 2007).  Multiple passengers were seated around the defendant and two flight

6

attendants testified to seeing the defendant's genitals and seeing him engaging in masturbation. Although the defendant testified that he took allergy medicine and Ambien, that he slept for most of the flight, and that he never unzipped his shorts or was ever exposed, the court found that he had intentionally made an obscene and indecent exposure of his penis to passengers. The court reasoned that the defendant's conduct was not an ordinary act involving exposure from carelessness, and that the exposure was indecent as a reasonable man knew or would have known his act would be open to the observation of others. *Id.* Likewise here, Mohanty intentionally took his penis out of his pants and masturbated while seated next to a14-year-old girl on an airplane. His intentional actions in removing his penis from his pants and masturbating inches from another passenger were sufficiently reckless to meet the general intent requirement.

Also comparably, in *Peyton*, the defendant was convicted of indecent exposure after witnesses saw the defendant, who was parked in a public place, seated in the driver's seat of his car with his penis exposed and the passenger doors open. 100 A.2d at 37. The defendant appealed, and the District of Columbia Court of Appeals affirmed the defendant's conviction, concluding that there was sufficient evidence to support the lower court's finding. *Id.* The court looked at the setting and circumstances surrounding the incident to determine whether the defendant's stated belief that no one would see him was reasonable. *Id*. The court reasoned that intent was shown beyond a reasonable doubt as the scene of the defendant's act was public enough and his conduct was sufficiently reckless to establish the requisite criminal intent. *Id*. *Compare with Hearn v. D.C*., 178 A.2d 434 (D.C. Cir. 1962) (defendant who was seen standing naked in front of his hotel midnight at midnight on two consecutive nights did not exhibit the requisite intent; because he was in his own room, after midnight, and his room overlooked a dark alley, there was no reason for him to believe anyone would see him).

*2. Intent under "masturbation" theory*

Where the government proceeds on a theory of intentional masturbation, to satisfy the intent requirement, the government must merely show that the defendant intended to engage in masturbation; as discussed above, under this theory, the government does not need to prove that the defendant exposed himself or intended his act to be seen. *See Parnigoni,* 933 A.2d at 826 ("a defendant must have intended to do *the prohibited act*, though 'the intent required is only a general one, and need not be directed toward any specific person or persons'") (emphasis added).

The government acknowledges that in *United States v. Clarke,* No. 2:13-cr-282-PMW, 2013 U.S. Dist. LEXIS 165943 (D. Utah Nov. 21, 2013), the Court found that the government had not met its burden of proving the intent requirement for *indecent exposure* where there was testimony indicating the defendant was moving his hand in the area of his pants covered by his coat, and it was only when the complaining witness bent down such that she could see under his coat that she saw him holding his exposed penis in his right hand. Importantly to the court's decision – and in contrast to the instant case – the government in *Clarke* "sought to prove only the prong of the statute concerning an obscene or indecent exposure of the Defendant's genitalia." *Id.* at *6. Accordingly, the government was required to prove intentional exposure, as discussed above. Here, in contrast, where the government is proceeding on the theory of intentional masturbation as well as intentional exposure, evidence that the defendant was intentionally masturbating is sufficient to carry the government's burden on intent, without any demonstration that the defendant intended his act to be seen. Moreover, as to the intentional exposure theory, in this case, the government anticipates that the evidence will show that Mohanty's exposure was more intentional and reckless than the defendant's in *Clarke* because, without Minor A changing her position at all, she saw him masturbating and his penis completely

exposed.  As discussed above, Mohanty's taking his penis out of his pants on an airplane within inches of a child who was awake was so public that it must be presumed it was intended to be seen by others, and/or involved recklessness sufficient to meet the intentional exposure requirement.

### C.  Sufficiency of Evidence

As discussed above, Minor A is expected to testify at trial that she saw Mohanty expose his penis, masturbate, and ejaculate right next to her on a full flight.  She is expected to also testify that she moved seats after he did so in order to get away from the situation, an action that two other passengers (her grandmother and the woman sitting next to her in the new seat) are expected to corroborate.  Further, at least one family member is expected to testify (if allowed) that within hours after landing Minor A told them what Mohanty did on the plane.  Thus, the government submits that there will be more than enough evidence to convict Mohanty after trial.  However, the government notes that even if Minor A was the only one to testify at trial, that could support a conviction should the fact-finder find her testimony credible.  "A federal conviction . . . can be based on the uncorroborated testimony of a single witness." *United States v. Hoskins*, 628 F.2d 295, 296 (5th Cir. 1980) (citation omitted) (holding that the testimony of the victim alone was sufficient to sustain the conviction even in view of conflicting evidence, namely the testimony of the defendant and fellow inmates; "credibility determinations are in the province of the [fact-finder]"); *see also United States v. Meises*, 645 F.3d 5, 12 (1st Cir. 2011) ("[t]he testimony of a single witness can be enough to support the government's case . . . and even the uncorroborated testimony of an informant may suffice . . .") (citations omitted); *United States v. Hickman*, No. 22-60580, 2023 U.S. App. LEXIS 14707 (5th Cir. June 13, 2023) (upholding conviction in child sexual abuse that hinged on the testimony of the minor victim,

even where there were inconsistencies between the child's account and her mother's).[5]

Accordingly, if the Court finds Minor A's testimony credible, that alone would be sufficient evidence to support a guilty verdict.

Respectfully submitted,

UNITED STATES OF AMERICA,
By its attorney,

JOSHUA S. LEVY
Acting United States Attorney

*/s/ Elianna J. Nuzum*
Elianna J. Nuzum
Jessica L. Soto
Assistant United States Attorney
John Joseph Moakley U.S. Courthouse
One Courthouse Way, Suite 9200
Boston, MA 02210
elianna.nuzum@usdoj.gov
jessica.soto@usdoj.gov
617.748.3100

Dated: January 22, 2024

## CERTIFICATE OF SERVICE

Undersigned counsel certifies that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Elianna J. Nuzum*
Elianna J. Nuzum
Assistant United States Attorney

Dated: January 22, 2024

---

[5] State courts have also so found when addressing what qualifies as sufficient evidence to support sexual assault and indecent exposure charges. For example, in *Wilson v. Commonwealth*, 46 Va. App. 73 (2005), the court held that credible testimony from the victim was sufficient to support defendant's conviction for indecent exposure. With respect to her delay in reporting, which the court described as "because of her fear of [her father], and her shame and embarrassment at what was happening to her," the court found it was "consistent with human experience and does not render her testimony inherently incredible." *Id.* at 88-89. (In that case, the Court also admitted a disclosure that the victim had made to her grandmother two years after the abuse began, to corroborate the victim's testimony.)